IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL, SON & CO., INC., d/b/a FRONTIER STEEL COMPANY, | ) ) ) | Civil Action No.  1:13cv128 |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| ERIK BEACH, ESMARK-EXCALIBUR LLC, and ERIC A. HOOVER, | ) ) ) ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiff, Samuel, Son & Co. d/b/a Frontier Steel Company ("Frontier"), by and through

its attorneys, Cohen & Grigsby, P.C., hereby files this Complaint against Defendants Erik Beach

("Beach"), Esmark-Excalibur LLC ("Esmark-Excalibur"), and Eric A. Hoover ("Hoover")

(collectively, "Defendants").

## I.      INTRODUCTION

1.      This action seeks damages and an injunction against the improper, unlawful and

deceptive conduct of Erik Beach and Esmark-Excalibur, who have misappropriated and misused

Frontier's confidential and proprietary information and trade secrets and raided Frontier's work force

in a calculated effort to undermine Frontier's market position.

2.      Plaintiff Frontier also seeks an order barring Defendant Esmark-Excalibur from

placing Frontier's former employees in positions that substantially overlap with the sales positions

they occupied before they were induced by Esmark-Excalibur and Hoover to quit without notice in

late April 2013.

3.      Beach – who is a former equity owner and officer of Frontier – misused his access to Frontier's computer system to steal extremely valuable and highly sensitive confidential information.  Specifically, Beach secretly e-mailed a large volume of confidential data, including customer lists, sales data and pricing information, to an authorized personal e-mail account from his company-issued email address.  On information and belief, these materials were taken for the use and benefit of Beach and Esmark-Excalibur, which is Beach's current employer.

4.      Upon information and belief, Esmark-Excalibur has used, and intends to continue using, this confidential information to unfairly compete with Frontier in the carbon steel business. At a minimum, the employment by Esmark-Excalibur of Frontier's former Vice President of sales and half of Frontier's prior sales force creates a substantial threat of trade secret misappropriation, given Esmark-Excalibur's refusal to take any steps to prevent the use of the highly sensitive stockpile of records that were stolen by Beach.

5.       Defendants also have used Frontier's confidential business information for the purpose of improperly soliciting Frontier's employees.  Hoover directed and/or participated in the tortious interference with Frontier's employment relationships.

6.      Esmark-Excalibur has refused to take reasonable steps to prevent the threatened misappropriation of Frontier's trade secrets.

7.      As a result of Defendants' wrongful and illegal misconduct, Frontier has suffered and continues to suffer irreparable harm, including loss of business, loss of goodwill, loss of employees and the actual and threatened loss of customers and suppliers.  Frontier has no adequate remedy at law for these injuries.  Frontier therefore seeks injunctive relief to restrain further violations of Pennsylvania law, to restrain threatened misappropriation of trade secrets,

2

and to prevent further tortious interference with the existing and prospective contractual relations of Frontier.

## II.    THE PARTIES

8.      Plaintiff Samuel, Son & Co. d/b/a Frontier Steel Company is a corporation operating under the laws of New Jersey with its principal place of business at 4334 Walden Ave., Lancaster, New York, 14086. The company's Frontier Steel division maintains offices at 4990 Grant Avenue, Neville Island, PA.

9.      Defendant Erik Beach is an individual who, upon information and belief, resides at 125 Old Country Lane, Sarver, PA 16055.

10.     Defendant Esmark-Excalibur LLC is a limited liability company operating under the laws of Delaware with its principal place of business at 9723 U.S. Highway 322, Conneaut Lake, PA 16316.  Esmark-Excalibur is owned by or affiliated with Esmark, Inc., which is engaged in the steel, oil and gas, aviation, real estate, technology and sports management business.

11.     Defendant Eric A. Hoover is an individual who, upon information and belief, resides at 10457 Alter Road, Conneaut Lake, PA  16316.  Hoover serves as the President of Esmark-Excalibur.

### III.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and is between citizens of different states.

13.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to Frontier's claims occurred in this judicial district and Defendants are subject to personal jurisdiction here.

14.    This Court has personal jurisdiction over Defendants because they (a) reside within, (b) have transacted business within, and (c) have caused tortious harm within the Western District of Pennsylvania.

### IV.    FACTUAL BACKGROUND

**A.    Frontier's Business**

15.    On December 20, 2012, Samuel, Son & Co. purchased the assets of Frontier Steel Company.  Frontier Steel Company is now a Samuel, Son & Co. operating division.

16.    Frontier is a leading distributor and processor of carbon steel plate products, which has been in operation since 1999.[1]  Its business includes the distribution, sale, marketing and/or processing of carbon steel plate, carbon flat roll, stainless steel, aluminum and other products and services.

17.    Frontier has become a leader in the industry by offering superior services and by establishing strong and stable customer relationships.

---

[1] Samuel, Son & Co., Inc. is the U.S.-based subsidiary of Samuel, Son & Co. Ltd., which is based in Canada and has been in operation for more than 150 years.

4

18.     The maintenance and formation of long-term contractual relationships with its customers is central to the success of Frontier.  Frontier has a substantial and legally protectable interest in:  (a) protecting and preserving its goodwill; (b) maintaining customer relationships and protecting its customer relationships from unfair competition; and (c) expanding the sale of Frontier services to existing and prospective customers.

19.     In carrying out its business, Frontier relies on a wide variety of confidential and proprietary business information and trade secrets, including but not limited to:  (a) information relating to Frontier's customer and supplier relationships; (b) financial data; (c) customer and prospective customer information, including listings of customer contact names compiled and maintained as confidential; (d) workforce information; and (e) pricing strategies.

20.     Frontier treats non-public information relating to its business as confidential, proprietary and commercially valuable trade secrets.  The disclosure and use of this information to or by Frontier's competitors would undermine Frontier's competitive advantage within the industry.

21.     This information was only shared with Beach and other former sales personnel of Frontier on the condition and with the express understanding that they would not use it for their own commercial benefit or for the benefit of Frontier's competitors.

**B.      Erik Beach's Employment with Frontier**

22.     On or about October 1, 2003, Beach entered into an employment relationship with Frontier Steel Company.  In 2011, he became an equity owner in the business.

23.     Upon Samuel, Son & Co.'s purchase of Frontier Steel Company's assets, Beach was offered a position as Vice President of Sales for Frontier.

5

24.     On January 3, 2013, Beach signed an offer letter from Frontier.  As Frontier's Vice President of Sales, Beach was paid $6595.81 on a biweekly basis in addition to receiving substantial benefits.  A true and correct copy of the signed offer letter is attached as Exhibit A.

25.     On January 2, 2013, Beach also signed a "Receipt and Acknowledgement of Samuel, Son & Co. Inc. Employee Guidelines & Procedures Manual."  In doing so, Beach acknowledged that he had received a copy of the employee manual and agreed to be bound by the rules and policies set forth therein.  He also expressly acknowledged that customer lists and pricing data are confidential.  A true and correct copy of the signed acknowledgement is attached as Exhibit B.

26.     In relevant part, Frontier's employee manual states as follows:

Employees shall not use for their own financial gain or disclose for the use or benefit of others, inside information obtained as a result of their employment with [Frontier].

All employees with access to or knowledge of confidential information, trade secrets, patents or specialized know-how must acknowledge that such information is at all times, both during and after employment the exclusive property of [Frontier] and may be required to sign confidentiality agreements. Furthermore, this information is to remain confidential whether or not an agreement to that effect has in fact been signed.

27.     Beach violated these provisions.

**C.      Frontier's Confidential Information and Trade Secrets**

28.     Frontier has developed and relies upon a wide variety of confidential and proprietary business information and trade secrets to conduct its business.

29.     Frontier's trade secrets include:  (a) purchasing and sales information, including but not limited to information regarding the type and quantity of carbon plate products required by its customers; (b) the buying habits and purchasing schedules of Frontier's customers; (c)

6

pricing practices; (d) other customer and prospective customer information, including listings of purchasing managers; (e) margin information; and (f) Frontier's pricing strategies.

30. The carbon plate business is highly competitive. Accordingly, companies doing business in the industry closely guard their customer lists, as well as information regarding pricing strategy, profit margins, customer turnover, pending orders, and prospective contracts. Operating successfully in the market also requires extensive knowledge of customer requirements and purchasing habits.

31. Frontier views and treats all of the foregoing information as strictly confidential. The disclosure of this information to the public or to Frontier's competitors would undermine Frontier's competitive advantage within the industry.

32. Frontier's compilation of commercial trade secrets is the product of a significant investment of Frontier's resources and funds and could not easily or lawfully be duplicated by its competitors without the expenditure of substantial time and money. Moreover, the information derives its value from remaining confidential. Frontier therefore has a substantial interest in preventing the use or disclosure of such information.

33. Frontier takes reasonable measures to protect the secrecy of its trade secrets, including but not limited to the use of a password protected computer system. In addition, all of Frontier's employees are subject to written confidentiality obligations that forbid unauthorized disclosure or use of the company's confidential and proprietary information.

34. Beach continued to review and receive Frontier's sensitive and valuable trade secrets for months after he began to violate his fiduciary duties.

35.     Each of the other employees solicited by Beach, Esmark-Excalibur and Hoover to resign their positions were also privy to extensive confidential customer and sales information that qualifies as trade secrets under Pennsylvania law.

36.     On information and belief, Beach conspired with Hoover and Esmark-Excalibur beginning no later than November 2012 to interfere with Frontier's employee and customer relationships.

37.     On information and belief, Hoover interfered with Beach's relationship with Frontier and induced Beach to violate his fiduciary duties.

**D.      Beach's Improper Use of Knowledge Gained During His Employment With Frontier**

38.     During his employment, Beach gained valuable knowledge, training and experience in the carbon steel industry.

39.     Because of his high-level position within Frontier's management team, Beach had extensive access to confidential and proprietary business information, including but not limited to customer lists, financial data and pricing strategies.  Beach was obligated to use this information solely for the benefit of Frontier and to safeguard this information from use by others.

40.     Beach was highly compensated for his work as Vice President of Sales for Frontier and was a trusted member of the company's upper management team.

41.     Over the course of his employment, Frontier entrusted Beach with sensitive, confidential and proprietary information and trade secrets that would be extremely valuable in the hands of competitors.

42.     In violation of that trust, Beach began misappropriating Frontier's confidential information and trade secrets in November 2012 by e-mailing highly sensitive customer, pricing and contact information from his Frontier e-mail account to a personal "Hotmail" address.

43.     Specifically, Beach sent hundreds of pages of Frontier's customer information, sales data, vendor contacts and pricing information to his personal e-mail account without permission.

44.     On November 20, 2012, Beach e-mailed customer ranking reports listing total sales to Frontier's top 100 customers for the years 2007, 2008, 2010, 2011 and 2012 to his Hotmail account.

45.     Beach sent other confidential reports to his personal e-mail account on the same date, including several lists of target accounts, a list of flat roll steel customers, and at least five separate company contact lists.  Collectively, the information taken by Beach provides a detailed blueprint to the company's customer relationships and sales and pricing strategy.

46.     On various dates in January 2013 and February 2013, Beach stole pricing reports and additional contact lists, which he sent to his Hotmail account.

47.     Company records establish, moreover, that he accessed a series of highly confidential company records over a several-day period leading up to his resignation for no discernible legitimate business reason.  These included confidential materials prepared for the company's quarterly meeting, which were accessed by Beach on the morning of the day on which he abruptly submitted his resignation.

48.    The information contained on these reports is highly confidential and valuable and is not generally known to others in the industry.  It is treated as confidential within Frontier and qualifies trade secrets under Pennsylvania law.

49.    Although Frontier's investigation remains in its early stages, the company's forensic review discovered hundreds of emails between Beach's work and Hotmail accounts. In addition, Beach appears to have taken steps to conceal his disloyal and improper conduct by wiping his company-issued IPhone of all data prior to returning it to Frontier.

**E.    Beach's Resignation and Solicitation of Frontier's Employees**

50.    On April 22, 2013, Beach resigned from his position with Frontier without notice and announced he was taking half of the company's sales force with him to work for a direct competitor.  Beach has stated that he intends to hire additional Frontier employees in the future.

51.    On the same date, Frontier employees Kathleen B. Martin, Adrienne Talarico, Todd C. Davis, or Ryan P. Morgan submitted their resignations. None of them provided any notice.  Beach was the supervisor of each of the employees who resigned.

52.    The employee walkout had a devastating impact on Frontier's operations.  On information and belief, the mass defection of employees was intentionally orchestrated by Beach and Hoover to cause the maximum possible amount of disruption to Frontier's sales efforts, and to gain an unfair advantage in the market.

53.    Armed with Frontier's customer lists, pricing, sales data and four of the sales personnel that he supervised, Beach immediately began working for Esmark-Excalibur.

54.    Upon information and belief, Esmark-Excalibur induced Beach to solicit Frontier's sales force in an unlawful attempt to damage Frontier's sales operation and to misappropriate Frontier's customer goodwill and confidential information.

10

55. Esmark-Excalibur directly competes with Frontier in the carbon steel industry.

56. Upon information and belief, Esmark-Excalibur has used the confidential information and trade secrets misappropriated by Beach to gain a competitive advantage over Frontier.

57. Since Beach's resignation, and the subsequent discovery of his intentional and outrageous conduct, Frontier has undertaken extensive efforts to investigate and address Beach's misappropriation of Frontier's confidential, proprietary and sensitive information.

58. As part of that inquiry, Frontier asked that Esmark-Excalibur delay deploying Beach, Martin, Talarico, Davis and Morgan in any sales position to give Frontier an opportunity to complete its investigation into their pre-resignation conduct.  Frontier also asked Esmark-Excalibur to provide job descriptions for the employees so that it could evaluate the degree to which their employment posed a risk of misuse of trade secrets.

59. Esmark-Excalibur refused to cooperate with the request, but did not deny that the employees would occupy positions that are virtually identical to the jobs they performed at Frontier. Each of the employees hired by Esmark-Excalibur was bound by the Samuel, Son & Company employee manual and has continuing confidentiality obligations.

60. The information and trade secrets Beach misappropriated are extremely valuable to Frontier's competitors, including Esmark-Excalibur.

61. Upon information and belief, Beach and Esmark-Excalibur have used and disclosed and/or will use and disclose Frontier's confidential and proprietary business information and trade secrets to the detriment of Frontier's legitimate business interests.

11

62.     Upon information and belief, Beach has unlawfully solicited and interfered with (i) Frontier's actual and prospective business relationships as well as (ii) Frontier's employees, in violation of the duties and obligations of confidentiality that he owes to Frontier.

63.     Unless and until Defendants are enjoined, Frontier will continue to be irreparably harmed.  This harm includes, but is not limited to, all of the following:

- loss of goodwill, confidence and trust in Frontier;

- loss of business reputation;

- loss of employees and/or other third parties having key relationships with Frontier;

- loss of critical business relationships; and

- exposure, misuse and loss of Frontier's confidential proprietary business information and/or trade secrets.

64.     Frontier has no adequate remedy at law to address these harms.

65.     Defendants' wrongful actions are ongoing and will continue unless enjoined by this Court.

**COUNT I**
**(Breach of Fiduciary Duty)**
**Frontier v. Beach**

66.     Paragraphs 1 through 65 are incorporated by reference.

67.     By virtue of his position as Frontier's Vice President of Sales, Beach occupied a position of trust and confidence at Frontier.

68.     Beach had a duty to act with the utmost good faith to advance the interests of Frontier as well as a duty not to compete with Frontier.

69.     Beach also owed a duty of undivided loyalty to Frontier.

70.     Upon information and belief, while still employed at Frontier, Beach undertook a scheme to solicit Frontier's customers, and solicited certain Frontier employees to leave their employment with Frontier and misappropriated Frontier's confidential and proprietary business information and trade secrets for use by himself and Esmark-Excalibur, a direct competitor to Frontier.

71.     Beach also began to surreptitiously access and email copies of confidential records to his Hotmail account, in violation of his duty of loyalty.

72.     This conduct violated Beach's fiduciary duty to Frontier.

73.     Upon information and belief, Beach has violated and continues to violate his duty of confidentiality by conveying to Esmark-Excalibur and other third parties confidential information concerning Frontier's customers, pricing and business strategies.

74.     Beach interfered, attempted to interfere and/or continues to interfere with Frontier's business relationships.

75.     Beach's conduct is willful, malicious, outrageous and ongoing.

76.     Beach's conduct has caused and will continue to cause irreparable injury to Frontier including loss of goodwill, loss of competitive position, potential loss of future business, loss of current business and misuse of Frontier's confidential and proprietary information and trade secrets.

77.     No amount of money can fully and adequately compensate Frontier for these losses, and its remedies at law are inadequate.

78.     Absent an injunction, Beach will continue to breach his continuing fiduciary duties to Frontier and endanger Frontier's legitimate business interests.

## COUNT II
### (Inducement of Breach of Fiduciary Duty)
### Frontier v. Esmark-Excalibur and Hoover

79.     Paragraphs 1 through 78 are hereby incorporated by reference.

80.     As set forth in Count I, Defendant Beach owed fiduciary duties to Frontier, which were breached.

81.     Defendants Esmark-Excalibur and Hoover had knowledge of the existence of the fiduciary duties Beach owed to Frontier.

82.     Esmark-Excalibur and Hoover had knowledge that Beach violated his fiduciary duties as to Frontier.

83.     Upon information and belief, Esmark-Excalibur and Hoover provided substantial assistance to Beach in achieving and carrying out violations of his fiduciary duties owed to Frontier.

84.     Esmark-Excalibur's and Hoover's conduct has caused and will continue to cause irreparable injury to Frontier including loss of goodwill, loss of competitive position, potential loss of future business, loss of current business and misuse of Frontier's confidential and proprietary information and trade secrets.

85.     No amount of money can fully and adequately compensate Frontier for these losses, and its remedies at law are inadequate.

## COUNT III
### (Trade Secret Misappropriation – Pennsylvania Uniform Trade Secret Act)
### Frontier v. All Defendants

86.     Paragraphs 1 through 85 are hereby incorporated by reference.

87.     While employed by Frontier in a position of confidence, Beach was exposed to and obtained confidential, proprietary and commercially sensitive information relating to

14

Frontier, including but not limited to customer information, customer lists, pricing strategies and business strategies.

88.    Martin, Talarico, Davis and Morgan also were privy to trade secrets of the company, including customer, pricing and sales information.

89.    As set forth above, Beach e-mailed Frontier's confidential information to his personal e-mail account for use with his current employer, Esmark-Excalibur, including sales data and lists of target accounts.

90.    Upon information and belief, Esmark-Excalibur has used and/or will use Frontier's confidential information to its competitive advantage.

91.    The foregoing information constitutes legally protectable trade secrets as defined by the Pennsylvania Uniform Trade Secret Act, 12 Pa. C.S. § 5301, *et seq*.

92.    The foregoing information has actual or potential economic value because it is not generally known to, and is not readily ascertainable by, Frontier's competitors.

93.    Frontier has taken measures that are reasonable under the circumstances to protect the confidentiality of the foregoing information.

94.    Defendants have obtained and used these trade secrets by improper means.

95.    Defendants have misappropriated and disclosed, and, unless enjoined by this Court, will continue to misappropriate and disclose, Frontier's trade secrets.

96.    Defendant Esmark-Excalibur hired Frontier's employees in order to gain access to Frontier's trade secrets and has placed those employees in virtually identical positions to the jobs they performed at Frontier.

97.    Defendant Esmark-Excalibur has refused to take any precautions to prevent the use or disclosure of Frontier's trade secrets.

15

98.    It will be difficult if not impossible for Frontier's former employees to carry out their job responsibilities at Esmark-Excalibur without relying upon Frontier's trade secrets.

99.    Beach, at a minimum, retained possession of a large volume of tangible confidential reports and trade secrets after his resignation, only some of which have been returned to Frontier.

100.    Defendants will use and disclose these trade secrets to and for the benefit of themselves.

101.    Defendants have used and will continue to use Frontier's trade secrets to the detriment of Frontier and to the unjust benefit of themselves.

102.    Prior to returning his company-issued telephone to Frontier, Beach wiped the device clean of data in an attempt to conceal his misconduct.

103.    Defendants' misappropriation and misuse of Frontier's trade secrets was willful and malicious.

104.    Frontier has suffered harm as a proximate result of Defendants' conduct.

105.    Defendants' misappropriation and misuse of Frontier's trade secrets caused and will continue to cause irreparable harm to Frontier, including loss of goodwill, loss of competitive position, potential loss of future business and loss of current business.

106.    No amount of money can fully and adequately compensate Frontier for these losses, and its remedies at law are inadequate.

## COUNT IV
### (Tortious Interference with Employment Relationships)
### Frontier v. All Defendants

107.  Paragraphs 1 through 106 are hereby incorporated by reference.

108.  Upon information and belief, Beach, Esmark-Excalibur and Hoover have intentionally and improperly interfered with, and continue to interfere with, Frontier's employment relationships by inducing certain employees to terminate their employment with Frontier.

109.  Upon information and belief, Defendants have deliberately acted to undermine Frontier's employment relationships by soliciting certain of Frontier's employees to leave Frontier to work for Esmark-Excalibur.

110.  Defendants' conduct resulted in the mass resignation of half of Frontier's sales force.

111.  Defendants' conduct was undertaken for the unlawful purpose of attempting to damage or destroy Frontier's sales operation and to misappropriate Frontier's customer goodwill and confidential information.

112.  Defendants' interference was not privileged.

113.  As a direct and proximate result of Defendants' wrongful conduct, Frontier has been damaged, has suffered irreparable harm and will continue to suffer immediate and irreparable harm unless and until these Defendants are enjoined from their wrongful conduct.

114.  No amount of money can fully and adequately compensate Frontier for these losses, and its remedies at law are inadequate.

## COUNT V
### (Tortious Interference with Contractual Relationships and Prospective Contractual Relationships)
### Frontier v. All Defendants

115.    Paragraphs 1 through 114 are hereby incorporated by reference.

116.    Upon information and belief, Defendants have intentionally and improperly interfered with, are presently interfering with, and plan future interference with, Frontier's existing and prospective contractual relationships with its customers by inducing or otherwise causing them not to perform pursuant to their contractual relationship.

117.    Defendants' interference was not privileged.

118.    Beach gained knowledge of the existence and terms of Frontier's actual and prospective contractual relationships with its customers by virtue of his position with Frontier.

119.    Esmark-Excalibur gained knowledge of the existence and terms of Frontier's actual and prospective contractual relationships with its customers by virtue of Esmark-Excalibur's relationship with Beach.

120.    As a direct and proximate result of Defendants' wrongful conduct, Frontier has been damaged, has suffered irreparable harm and will continue to suffer immediate and irreparable harm unless and until these Defendants are enjoined from their wrongful conduct.

121.    No amount of money can fully and adequately compensate Frontier for these losses, and its remedies at law are inadequate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief from the Court:

(a)    A temporary restraining order and/or preliminary injunction

(i)    enjoining and restraining Defendants from possessing, using or disclosing Frontier's confidential proprietary business information and trade secrets;

18

(ii)     enjoining and restraining Defendants from soliciting Frontier employees or otherwise interfering with Frontier's employment relationships;

(iii)    enjoining and restraining Defendants from interfering with Frontier's existing and prospective contractual relationships, including its relationships with its suppliers and customers;

(iv)    enjoining and restraining Defendants from contacting Frontier's customers and suppliers for the purpose of inducing them to sever their business relationships with Frontier or enter into a contractual supply or customer relationship with Esmark-Excalibur, until such time as the pricing and other confidential commercial information stolen by Defendants becomes stale;

(v)     enjoining and restraining Esmark-Excalibur from assigning Beach, Talarico, Martin, Davis or Morgan to positions with geographic sales territories or customer target lists that overlap with accounts they gained knowledge of or worked with during their employment at Frontier;

(vi)    directing Defendants to immediately return to Frontier all materials in their possession concerning Frontier or its business, including, but not limited to, any documents, computer files or computer disks and permitting independent inspection of any computers, storage devices, smart phones and email systems or services used by them to confirm that no Frontier information remains in their possession or control;

(vii)   imposing a constructive trust upon any profits or compensation earned by or paid to Defendants for any dealings that Defendants have had with any Frontier customer or potential customer since the initiation of Defendants' wrongful conduct;

(viii)  ordering any other relief that is just and proper under the circumstances.

(b)     Upon hearing and/or trial, a permanent injunction continuing the foregoing relief, and

(i)     entering an award in favor of Frontier and against Defendants for compensatory damages and/or an equitable accounting and disgorgement of any and all profits arising from Defendants' unlawful conduct, reimbursement of all costs and expenses, including attorneys' fees, incurred in connection with this litigation, punitive and exemplary damages;

(ii)     disgorgement by Beach of all compensation or other monies paid to him by Frontier since the initiation of his breach of fiduciary duties and reimbursement for the costs of locating and training replacements for the employees induced to terminate their employment with Frontier;

(iii)     such other relief as the Court deems proper under the circumstances.

**JURY TRIAL REQUESTED ON ALL CLAIMS SO TRIABLE**

Respectfully Submitted,

COHEN & GRIGSBY, P.C.

By: _/s/ Barbara A. Scheib_____
     Barbara A. Scheib (Pa. ID No. 82584)
     Leah R. Imbrogno (Pa. ID No. 309450)

625 Liberty Avenue
Pittsburgh, PA 15222-3152
(412) 297-4900

*Attorneys for Plaintiff, Samuel, Son & Co., Inc. d/b/a Frontier Steel Company*

Dated: May 7, 2013
1855243.v1

20